UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| S.A., by next friend SHANTELL ALLEN, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Cause No. 2:22-CV-359 -PPS-JPK |
| E.I. DU PONT DE NEMOURS AND COMPANY, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This is an old case that was reassigned to me late last year. [DE 16.] It is one of a series of related toxic tort lawsuits brought in this district by various groups of East Chicago residents.[1] With one exception (the *Alvarez* case), all of these matters have yet to proceed past the pleading stage. The plaintiffs in this case are 11 minors who formerly resided at the West Calumet Housing Complex or attended Carrie Gosch Elementary School in East Chicago. Plaintiffs claim various entities negligently exposed them to harmful levels of lead, arsenic, and other toxins by introducing these hazardous materials decades ago on land adjacent to West Calumet and Carrie Gosch.

---

[1] *See Holiday et al. v. Atlantic Richfield Company*, No. 2:16-CV-525 (Dec. 20, 2016); *Barbee et al. v. Atlantic Richfield Company et al.*, No. 2:17-CV-193 (Apr. 26, 2017); *Baker et al. v. Atlantic Richfield Company et al.*, No. 2:17-CV-429 (Nov. 15, 2017); *Alvarez et al. v. Atlantic Richfield Company et al.*, No. 2:17-CV-414 (Oct. 31, 2017); *Adams et al. v. Atlantic Richfield Company et al.*, No. 2:18-CV-375 (Oct. 4, 2018). In addition to the matters pending before this Court, I am advised that a group of plaintiffs are separately pursuing claims against the City of East Chicago and various other state and municipal entities, as part of two consolidated actions currently pending in Lake Superior Court. *See G.J.2 et al. v. Indiana State Dept. of Health, et al.*, No. 45D05-1803-CT-3 (Mar. 13, 2018). In state court, the plaintiffs assert that the government knowingly and intentionally constructed West Calumet and Carrie Gosch on polluted land, let plaintiffs live there unwittingly, and failed to warn them about the contamination.

Defendants E.I. du Pont de Nemours and Company and the Chemours Company (collectively, "DuPont") and Hammond Lead Products, LLC, Halstab, LLC, Hammond Group, Inc., and Halox, LLC (collectively, "Hammond Lead") have moved to dismiss Plaintiffs' amended complaint and strike class allegations in the complaint pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure. [DE 31; DE 33; DE 35; DE 38; *see* DE 30 (First Amended Class Action Complaint).] For the reasons that follow, the motions to dismiss will be granted in part and denied in part, and the motion to strike the putative class claims will be denied.

## Background

Plaintiffs originally filed the case in state court; it was removed to federal court in November 2022. [DE 1; DE 7.] The defendants moved to dismiss Plaintiffs' initial pleading [DE 9; DE 11; DE 15], and in the course of the briefing, Plaintiffs filed the First Amended Class Action Complaint [DE 30]. The motions directed to the prior complaint were denied without prejudice as moot. [DE 40.]

Turning to the allegations of the operative complaint, Plaintiffs are 11 minors who formerly resided at the West Calumet Housing Complex, a public housing project, or attended Carrie Gosch Elementary School.[2] [DE 30.] West Calumet was constructed in the early 1970s on the site of a former lead refinery, which the EPA later designated as a Superfund Site. The school was adjacent to the housing project and closed in 2016. The

---

[2] For completeness, the plaintiffs in this case include: S.A., C.A.1, C.A.2, D.B.1, and D.B.2, by their mother, Shantell Allen; A.J.1 and A.J.2, by their mother, Angela Owens; Z.S., D.D., and D.H., by their mother, Autumn Bracey-Stevens; and N.M., by his next friend, Fatin Muhammed (collectively, "Plaintiffs").

City of East Chicago informed residents of West Calumet that they would have to move

out of the housing complex in July 2016. In 2017, the complex closed, and in 2018, it was

demolished.

The pollution at the heart of this case dates back over a century. From 1910 to

1949, Plaintiffs claim DuPont operated a facility next door that manufactured lead

arsenate insecticide, which allegedly "contributed to pollution" of the land. Since 1930,

Hammond Lead had produced lead substances on adjacent property, as well, causing

hazardous substances to contaminate the land where Plaintiffs' lived.

The EPA has been involved with the Superfund Site for over two decades. In

August 2005, the EPA listed among "parties potentially responsible for the

contamination at [the Superfund Site]" DuPont, Hammond Lead, and Atlantic Richfield

Company, along with unidentified "others." In 2009, the Superfund Site was placed on

the National Priorities List, and the EPA in 2014 filed suit against ARCO and DuPont in

connection with pollution on the Superfund Site. That case was assigned to me, *see*

Cause No. 2:14-CV-312-PPS-PRC, and was resolved with a consent decree, pursuant to

which the defendants agreed to pay roughly $26 million to clean up the property.

For decades, residents of West Calumet claim they were unwittingly exposed to

contamination directly caused by Defendants. Although Defendants knew of the

contamination and its dangers, Plaintiffs assert that they "intentionally" and "actively

concealed" the fact and extent of the pollution and the dangers it posed. At the same

time, Plaintiffs acknowledge the fact that the government investigated pollution at the

Superfund Site for many years, put the Superfund Site on the National Priorities list, and pursued an enforcement action against ARCO and DuPont to remediate the pollution dating back to 1910. Despite all this action around the Superfund Site years prior to the closure of West Calumet, Plaintiffs claim they were first notified of the contamination and its dangers in July 2016, when the Mayor of East Chicago notified them about results of the EPA's testing at the Superfund Site. While the government collected samples from the Superfund Site for many years during its investigation, Plaintiffs claim they only received these samples in 2016.

That November, West Calumet residents sought to intervene in the government's enforcement action, hoping to weigh in on the remediation plan. I denied the motion to intervene and noted that the proposed clean-up plan was mailed to all residents within two miles of the Superfund Site and notice of the lodging of the consent decree was filed years earlier, in September 2014. *See United States v. Atlantic Richfield Co.*, 324 F.R.D. 187, 189, 191–92 (N.D. Ind. 2018). Plaintiffs nonetheless allege that they were unaware of their exposure to hazardous levels of contamination caused by Defendants' pollution at the Superfund Site until they received notice of the EPA's testing results from the City of East Chicago in July 2016.

All Plaintiffs assert individual claims of negligence and negligent infliction of emotional distress. [DE 30, ¶¶114–48.] They claim Defendants, at various times between 1910 and 1985, introduced contaminants (including lead, arsenic, and "other toxins") into the air, soil and/or groundwater, causing them to develop health conditions and/or

suffer an increased risk of various illnesses linked to exposure to hazardous levels of

lead, along with severe emotional distress due to their fear of exposure to toxic

pollution. Defendants allegedly breached a duty not to permit or allow hazardous

substances from their facilities to contaminate Plaintiffs' properties and expose Plaintiffs

to such substances, as well as a duty to warn Plaintiffs of the release or threatened

release of such substances into the soil. *Id.*, ¶¶ 116–23. At bottom, the negligence counts

re-assert that Plaintiffs were exposed to hazardous levels of lead "or other toxins" while

residing at West Calumet or attending Carrie Gosch, which Defendants introduced into

the air, soil, and/or groundwater decades earlier, and as a consequence they suffer

"physical, mental, and emotional harm as a direct and proximate result" of their

exposure to lead and other toxins. *Id.*, ¶¶ 96, 132, 134. Plaintiffs seek costs of medical

monitoring, monetary damages for "personal injuries, pain, and suffering," and an

award of punitive damages. *Id.* at 30.

In addition to their individual claims, Plaintiffs set forth five "Class

Representatives Plaintiffs" (Shantell Allen's children – S.A., C.A.1, C.A.2, D.B.1, and

D.B.2) and seek to assert negligence and NIED claims on behalf of two putative classes of

individuals that had not reached the age of maturity prior to the filing of this lawsuit.

[DE 30, ¶¶ 97–102.] Initially, Plaintiffs seek to proceed on negligence and NIED claims

on behalf of a "Residents Class," consisting of any individuals born on or after December

20, 2002, who resided at West Calumet or enrolled and attended classes at Carrie Gosch.

*Id.*, ¶ 99. They also seek to proceed on these claims on behalf of a "Bodily Injury Class,"

consisting of Residents Class members "who have been diagnosed by a medical professional with and/or treated by a medical professional for one or more of the diseases or conditions associated with exposure to lead, arsenic, or other toxic chemicals" set forth in paragraphs 89 to 93 of their complaint. *Id.*

Plaintiffs claim lead exposure "has its strongest effect on children and child brain development," and provide a listing of diseases for which those exposed to lead are at increased risk, including:

> Cardiac effects such as myocardial damage, myocarditis; hypertension; gastrointestinal effects; kidney damage, and disease; failure liver effects; blood disorders; neurological effects such as encephalopathy, peripheral neuropathy, paresthesia, numbness and pain; neuropsychological effects, such as memory loss, confusion, mood swings, seizures, and aggression; reproduction effects such as spontaneous abortion and malformations; developmental effects such as decrements in IQ scores, deficits in school performance, learning difficulty, delayed neurodevelopment, growth retardation, attention deficit disorder, and attention deficit hyperactivity disorder.

*Id.*, ¶ 89. They further claim lead exposure "is a causal factor in asthma," and "can damage vision causing cataracts, optic nerve damage, and vision loss." *Id.*, ¶¶ 90–91. Finally, they claim children that are exposed to "even low levels of lead develop difficulties learning, and, if the exposure does not stop, the damage will continue and is permanent." *Id.*, ¶ 93.

All of the individual defendants and putative class representatives currently "suffer[] from" conditions for which they claim they are placed at higher risk due to Defendants' contamination, and which were directly and proximately caused by Defendants' alleged activities on the Superfund Site.

[DE 30, ¶¶ 12–22. For example, plaintiff D.H., by and through his mother, Autumn Bracey-Stevens, claims to suffer from conditions including "irritability, decreased IQ and mental aptitude, personality change, hyperactivity, nausea, abdominal pain, loss of appetite, small stature, vision impairment, muscular weakness, and lung disease," and has suffered "emotional distress, anguish, and pain and suffering" in connection with these conditions. *Id.*, ¶ 21.

Before turning to the substance of the motions, I will note that the complaint only provides factual allegations about health conditions directly linked to exposure to hazardous levels of lead. [DE 30, ¶¶ 87–94.] Plaintiffs' allegations about injuries linked to "other toxins" are vague and undeveloped. Accordingly, and in keeping with my prior rulings in several related matters, any named plaintiff asserting a claim of negligence must have adequately alleged a present physical injury included among the illnesses caused by exposure to hazardous levels of lead.

## Discussion

### Motion to Dismiss

Let's start with a brief discussion of the standards that govern my decisionmaking. Under Federal Rule of Civil Procedure 8(a), Plaintiffs' complaint must contain "a short and plain statement showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a). Federal Rule of Civil Procedure 12(b)(6) permits a party to

move for dismissal if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

At this stage, I accept the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiffs. *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021). However, to avoid dismissal under Rule 12(b)(6), a claim for relief must be "plausible on its face." *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires a plaintiff to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Seventh Circuit has explained that a plaintiff must plead facts that "suggest a right to relief that is beyond the speculative level," which requires alleging "enough details about the subject-matter of the case to present a story that holds together." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "[S]heer speculation, bald assertions, and unsupported conclusory statements" in the complaint fail to meet this burden. *Taha*, 947 F.3d at 469.

I.    **Negligence Claims**

Under Indiana law, a negligence claim requires a showing that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty

8

by allowing conduct to fall below the applicable standard of care; and (3) the plaintiff suffered compensable injury proximately caused by the defendant's breach. *Knighten v. E. Chi. Hous. Auth.*, 45 N.E.3d 788, 791 (Ind. 2015). Defendants raise three arguments for dismissal of the negligence claims – Plaintiffs fail to adequately allege DuPont owed them a duty to warn of the contamination on their adjacent properties; and Plaintiffs' allegations fail to allege injuries directly and proximately caused by lead and "other toxins," respectively.

Initially, DuPont asserts that Plaintiffs fail to adequately plead a duty to warn. [DE 36 at 13–14.] DuPont essentially asks me to ignore Plaintiffs' specific allegation that Defendants kept the pollution a secret from Plaintiffs, and they were only informed of the extent of the pollution in 2016, because this allegation is "conclusory" and "implausible" in context, because there was a "wide knowledge of contamination" around the Superfund Site.

To be sure, there are facts alleged in the complaint detailing a history of EPA investigation and enforcement activity in connection with the Superfund Site. It's possible that such activity reasonably put at least some of the named plaintiffs on notice of the contamination of the land prior to receiving a letter from the City of East Chicago in 2016. But they tell me a different story, and it strikes me as a plausible one. It may be that a preponderance of evidence reflects Plaintiffs reasonably knew of the contamination and Defendants did not owe a duty to warn based on the EPA listing the Superfund Site on its National

Priorities list, or based on its enforcement action filed a little over two years prior to this suit. But the question at this stage is whether Plaintiffs have plausibly alleged that they could not have reasonably known of their injuries caused by exposure to hazardous levels of lead contamination because Defendants intentionally failed to inform Plaintiffs about their polluting activities. Whether this will in fact be borne out in discovery is anybody's guess. But for now, it's enough to say that it is certainly plausible. As a result, it would be premature to dismiss Plaintiffs' negligence claims based on a failure-to-warn theory. With the benefit of a more fulsome record after discovery has been taken, Defendants can of course raise the argument anew at summary judgment. *Accord Baker v. Atl. Richfield Co.*, No. 2:17-CV-429-JVB-JPK, 2021 WL 3726050, at *6 (N.D. Ind. Aug. 23, 2021).

Next, Defendants challenge Plaintiffs' claims that they suffered injuries proximately caused by their alleged introduction of hazardous levels of lead and "other toxins" on their property. As I previously pointed out, Plaintiffs do not meaningfully allege a connection between their alleged injuries and any contaminant other than lead. Because Plaintiffs fail to allege facts clearly linking their general categories of alleged injuries to exposure to contaminants other than lead, any injuries allegedly caused by the introduction of those substances onto the land are entirely speculative. Accordingly, Plaintiffs' negligence claims

10

based on "other toxins," aside from lead, are dismissed with prejudice for failure to plead causation.

However, Plaintiffs adequately allege Defendants proximately caused their alleged injuries based on ingestion of hazardous levels of lead. Under Indiana law, proximate causation requires both "factual causation" and "legal causation." *Fifth Third Bank v. CSX Corp.*, 306 F. Supp. 2d 841, 853 (N.D. Ind. 2004). *See also Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 445 (7th Cir. 2009) ("Courts remain entirely free to dismiss a claim . . . where the pleadings do not permit a reasonable inference of proximate cause."). As many courts elsewhere across this district have repeatedly held (and I have repeatedly noted in separate opinions entered in several related matters), it is not necessary for Defendants' contamination to be "*the* proximate cause, but only *a* proximate cause, of the Plaintiffs' injuries to succeed on a claim of negligence." *Rolan v. Atl. Richfield Co.*, 2017 WL 3191791, at *18 (N.D. Ind. July 26, 2017) (citing *Carey v. Ind. Physical Therapy, Inc.*, 926 N.E.2d 1126, 1129 (Ind. Ct. App. 2010)) (finding resolution of causation issue required "a more factually intensive inquiry" inappropriate for resolution at the pleadings). *See also, e.g., Baker*, 2021 WL 3726050, at *6 ("Indiana does not require that a defendant be the proximate cause of damages in a negligence action; it requires only that a defendant be a proximate cause.").

Defendants take issue with the lack of detail linking their alleged pollution decades ago to Plaintiffs' present physical injuries caused by lead

exposure. This is Hammond Lead's sole argument for dismissal of the negligence count. [DE 32 at 7–8.] DuPont notes that Plaintiffs repeatedly allege that they ingested lead that was introduced onto their land by Defendants. But, DuPont argues, these "conclusory and repetitive allegations . . . do not make their causation allegations plausible" – I should peel the onion back further to assess if the allegation is plausible in the proper "context." [DE 36 at 12–13.] DuPont notes the complaint alleges the City of East Chicago offered lead testing to all West Calumet residents, but Plaintiffs do not claim that they took advantage of this testing or were found to have elevated lead levels as a result of such testing. *Id.* In other words, because Plaintiffs have had "years" to develop the factual foundation of their claims, and still fail to specifically articulate that they have developed a medical condition as a result of exposure to particular contaminants left there by the Defendants, I am told their claims must fail for lack of causation. *See id.*

All of the individual plaintiffs specifically assert that they ingested hazardous levels of lead, Defendants introduced this hazardous material onto their property, and they suffer illnesses of the variety caused by exposure to hazardous levels of lead. The story Plaintiffs tell strikes me as entirely plausible, even if Defendants would prefer additional factual allegations more specifically tying *their* alleged lead contamination to Plaintiffs' claimed injuries. At this stage, the allegations put Defendants on notice of Plaintiffs' theory of harm, and that is

all Rule 8(a) requires. In sum, following the lead of fellow courts in this district evaluating virtually identical claims, I decline to dismiss Plaintiffs' negligence claims based on exposure to hazardous levels of lead due to a failure to adequately plead causation.

In sum, Plaintiffs will not be allowed to proceed on their negligence claims to the extent they allege injuries proximately caused by Defendants' introduction of "other toxins" on their property. However, their negligence claims based on alleged injuries proximately caused by Defendants' introduction of lead state a plausible claim for relief and will be allowed to proceed.

## II.    NIED Claims

Let's shift gears and examine Plaintiffs' negligent infliction of emotional distress claims. Plaintiffs claim that Defendants' contamination has caused them "significant emotional distress," including fear of contracting illnesses associated with exposure to the contaminants, fear that their family members and guests will contract future illnesses associated with such exposure, and generalized fear that the "contamination has affected their health." [DE 30, ¶¶ 147.] They further assert medical monitoring is included as a facet of damages for this type of negligence claim under state law. *Id.*, ¶ 148.

In *Spangler v. Bechtel*, the Indiana Supreme Court observed, "The right to seek damages for emotional distress in actions for negligence *often referred to as actions for negligent infliction of emotional distress*, is carefully circumscribed under

Indiana jurisprudence." 958 N.E.2d 458, 466 (Ind. 2011) (emphasis added). Indiana law had "never permitted . . . an action seeking damages for emotional distress predicated upon a breach of an alleged duty not to inflict emotional injury on another," and such "independent, stand-alone actions for negligent infliction of emotional distress are not cognizable." *Id. See, e.g.*, *Vestal v. Heart of CarDon, LLC*, 2018 WL 3008638, at *12 (S.D. Ind. June 15, 2018) (applying *Spangler*) (NIED "is not a stand-alone cause of action, but instead is permitted . . . where the 'defendant's breach of a legal duty to the plaintiff' causes a 'direct impact' upon the plaintiff"). As previously noted, all Plaintiffs state a plausible, standalone negligence claim based on their alleged manifested health conditions, for which they are at heightened risk due to their alleged exposure to Defendants' contamination on the Superfund Site.

Defendants tell me the NIED claims must be dismissed because Plaintiffs do not adequately allege causation and do not satisfy Indiana's "modified impact rule" or "bystander rule." [DE 32 at 10–12; DE 36 at 15–17.] I can set aside the causation argument in light of the foregoing discussion of Plaintiffs' negligence claims. [*See* DE 36 at 15.] The real question is whether Plaintiffs adequately allege a cause of action in light of the state's modified impact rule or bystander rule.

The Indiana Supreme Court more recently construed *Spangler* to hold that "emotional-distress damages are recoverable in negligence-based claims only when a party can satisfy (1) the modified-impact rule or (2) the bystander rule."

14

*Community Health Network, Inc. v. McKenzie*, 185 N.E.3d 368, 379 (Ind. 2022)

(citing *Spangler*, 958 N.E.2d at 466, 471). I can set the bystander rule aside for our

purposes. Under that rule, a standalone NIED claim is permitted absent a direct

physical impact on the plaintiff only if the plaintiff has "witnessed or come to the

scene soon after the death or severe injury of certain classes of relatives." 958

N.E.2d at 467. *See, e.g., Pickens v. New York Life Ins. Co.*, 2019 WL 4740829, at *3

(N.D. Ind. Sept. 27, 2019). Suppose a mother is at a bus stop with her child when

she witnesses her child being run over by an inattentive motorist who is texting

and driving. The mother in that case would have a viable NIED claim as a

bystander. There is no plausible claim that any of the Plaintiffs in this case can be

reasonably called bystanders.

But what about the other theory of negligent infliction of emotional

distress – the modified-impact rule? In *Community Health*, the Indiana Supreme

Court provided little analysis of the rule, beyond noting that *Spangler* requires

that the plaintiff "personally sustained a physical impact," in addition to

emotional distress damages. 185 N.E.3d at 379 (citing 958 N.E.2d at 467). The

Court found in straightforward fashion that the "undisputed facts establish[ed]

that [the plaintiffs] suffered no physical impact" as a result of the misuse of their

private medical records.

Digging a little deeper, the Supreme Court has explained that this rule "is

known as the 'impact rule' because of the requirement that there be some

15

physical impact on the plaintiff before recovery for mental trauma will be allowed," and it has been the law of the land in Indiana for over "one hundred years." *Shuamber v. Henderson*, 579 N.E.2d 452, 454 (Ind. 1991) (citing *Kalen v. Terre Haute & I.R.R. Co.*, 47 N.E. 694 (Ind. Ct. App. 1897)). "The rule, as applied in Indiana, has three elements: (1) an impact on the plaintiff; (2) which causes physical injury to the plaintiff; (3) which physical injury, in turn, causes the emotional distress." *Id.* (citing *Boston v. Chesapeake & O. Ry.*, 61 N.E.2d 326, 327 (Ind. 1945)). A "direct impact" for purposes of the modified impact rule is properly understood as the requisite measure of "direct involvement" in the incident giving rise to the emotional trauma," and thus, "it matters little how the physical impact occurs, so long as that impact arises from the plaintiff's direct involvement in the tortfeasor's negligent conduct." *Conder v. Wood*, 716 N.E.2d 432, 435 (Ind. 1999)).

*Atlantic Coast Airlines v. Cook*, 857 N.E.2d 989 (Ind. 2006) is a useful illustration cited favorably by the Court in *Spangler*. In *Cook*, the plaintiffs were involved in a harrowing incident on an aircraft shortly after the 9/11 tragedy. Essentially, the plaintiffs contended that the airline (and others) were negligent in allowing another passenger to board the aircraft who later engaged in menacing behavior in flight. That passenger marched up and down the aisle, threatened others on board and perpetually smoked cigarettes despite rules to the contrary. 857 N.E.2d at 991–92. The plaintiffs were justifiably terrified by the

incident. They argued that breathing smoke from a lit cigarette and experiencing vibrations from stomping feet caused a direct physical impact, as well as a "constructive impact by virtue of the physical effects on the [plaintiffs'] vital body functions," like breathing, heart rate, and acuteness of their senses. *Id.* at 998.

With this backdrop, the Court examined case law on the physical impact requirement, *id.* at 998–99, and concluded that "constructive impact" in the form of "physical changes" can satisfy the rule. However, the plaintiffs merely alleged "what can best be described as the human body's natural response to fear and anxiety," which fell short of a "physical change" like, for example, "the destruction of healthy lung tissue" as a result of a physician's failure to diagnose a plaintiff's lung cancer. *Id.* at 998 (citing *Alexander v. Scheid*, 726 N.E.2d 272, 284 (Ind. 2000) (holding that patient suffering from the destruction of healthy lung tissue due to physician's failure to diagnose cancer was sufficient for negligent infliction of emotional distress)). Applied to the complaint in this case, Plaintiffs have adequately alleged manifest health conditions linked to exposure to hazardous levels of lead and have therefore alleged facts from which one could plausibly infer "physical changes" that form a "constructive" physical impact to state a NIED claim.

As explained in *Alexander v. Scheid*, which *Cook* built upon, the state's modified impact rule is designed to "preclude[] recovery for the case in which a

17

plaintiff experienced real mental stress in the absence of a physical injury." 726
N.E.2d 272, 283 (Ind. 2000). But as in *Alexander*, this is not that case. There, the
Indiana Supreme Court confirmed that a NIED claim lies where a plaintiff asserts
a physical impact in the form of a presently manifested health condition caused
by a defendant's negligence. The court explained that the "impact" in that case
did not consist of the underlying negligent act (a physician's failure to diagnose
the plaintiff's cancer), but rather "as a result of the defendant's negligence, [the
plaintiff] suffered the destruction of healthy lung tissue by a cancerous tumor."
*Id.* at 284. *See also, e.g., Bader v. Johnson*, 732 N.E.2d 1212, 1222 (Ind. 2000)
(plaintiff's "continued pregnancy and the physical transformation her body
underwent as a result, satisfy the direct impact requirement of our modified
impact rule"). Here, all of the individual Plaintiffs specifically allege that they
were exposed to lead contamination at dangerous levels on their properties, are
at increased risk for physical ailments linked to lead exposure, and they have
suffered emotional distress as a result of this direct impact to them physically.
Despite Defendants' arguments to the contrary, the complaint does allege
presently manifested conditions that form a basis for a "direct physical impact"
on Plaintiffs, independent of mere "exposure" to lead contamination.

  Defendants' argument that Plaintiffs "have not and cannot" allege "direct
involvement" because their operations predated the construction of the
properties on which Plaintiffs claim they were exposed to contaminants strikes

me as odd, in light of the foregoing cases. [*See* DE 45 at 4.] Defendants point me to *Perkins v. Stesiak*, 968 N.E.2d 319, 322 (Ind. Ct. App. 2012) for the proposition that the modified impact rule is not satisfied where an impact "was removed in both time and place from the injury-producing event." [*See, e.g.*, DE 44 at 7.]

*Perkins* involved a grandmother's claims based on emotional distress allegedly caused by physical confrontations with her grandson at home during a period when he suffered sexual abuse at school. The court held that the "incident giving rise to the emotional trauma" was the "sexual abuse perpetrated on Perkins's grandson while he was at school," rather than her direct confrontations with him at home. *Id.* Because she was not "present at the scene of the injury-producing event," she could not rely on the modified impact rule. (Her claims also failed to pass muster under the bystander rule, but that's beside the point.) While *Perkins* cited *Cook* for the broad proposition that a plaintiff must sustain a physical impact "from the plaintiff's 'direct involvement in the tortfeasor's negligent conduct,'" I have been unable to find any further support for this construction of "direct involvement" in any Supreme Court decisions postdating *Cook*, *Alexander*, or *Bader*. In light of this dearth of authority reaffirming *Perkins*' narrow construction of "direct involvement," I am left with significant doubts that the state Supreme Court would be inclined to adopt such a view and therefore decline to dismiss the NIED claims on this basis.

19

In sum, Plaintiffs' allegations satisfy Indiana's modified impact rule for NIED claims. Therefore, they will be allowed to proceed with their NIED claims, along with their negligence claims based on injuries allegedly caused by Defendants' lead contamination on the Superfund Site.

**<u>Motions to Strike</u>**

Defendants also seek to strike Plaintiffs' class allegations. Rule 23(a) of the Federal Rules of Civil Procedure provides an action may be certified as a class action if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

There are two other requirements at class certification: "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior" to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). Rule 23(c)(1)(A) requires courts to determine whether to certify an action as a class action "[a]t an early practicable time" in the case, and Rule 23(d)(1)(D) permits courts to enter orders that "require the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."

Before the plaintiff seeks to certify a class, the defendant may file a motion under Rule 12(f) to "'strike class allegations at the pleading stage when they are facially and

20

inherently deficient,' particularly when the dispute is not factual and discovery is unnecessary to resolve it." *Miles v. Am. Honda Mot. Co., Inc.*, No. 17-C-4423, 2017 WL 4742193, at *5 (N.D. Ill. Oct. 19, 2017) (quoting *Cholly v. Uptain Group, Inc.*, No. 15 C 5030, 2015 WL 9315557, *3 (N.D. Ill. Dec. 22, 2015)); *see also Huddleston v. Am. Airlines*, *Inc.*, No. 16-CV-09100, 2018 WL 4742097, at *2 (N.D. Ill. Oct. 2, 2018).

The present motion has a cart-before-the-horse feel to it. And, indeed, a number of district courts in this circuit have observed that motions to strike class allegations are "generally disfavored and fall under the purview of Rule 23 rather than Rule 12(f)." *Beyer v. Michels Corp.*, No. 21-CV-514-PP, 2023 WL 2693439, at *12 (E.D. Wis. Mar. 29, 2023) (collecting cases); *see also Womick v. Kroger Co.*, No. 21-CV-00574-NJR, 2022 WL 1266630, at *2 (S.D. Ill. Apr. 28, 2022) ("District courts within the Seventh Circuit evaluate motions to strike class allegations under Rule 23, not Rule 12(f)." (internal quotation omitted)).

While there has been some disagreement among the lower courts as to which party bears the burden "when the propriety of class certification is raised by means of a motion to strike class allegations," more recent cases in this circuit have coalesced on the position that "where the plaintiffs have not yet had the benefit of class discovery, the defendant 'bears the burden of proving that the proposed class is not certifiable.'" *Womick*,  2022 WL 1266630, at *2 (quoting *Kurt v. Platinum Supplemental Ins., Inc.*, 2021 WL 3109667, at *13 (N.D. Ill. July 22, 2021)) (collecting cases); *see also Beyer*, 2023 WL 2693439, at *12. Additionally, where "the dispute concerning class certification is factual

in nature and discovery is needed to determine whether a class should be certified . . . a motion to strike the class allegations at the pleading stage is premature." *Harris v. Rust-Oleum Corp.*, No. 21-CV-01376, 2022 WL 952743, at *3 (N.D. Ill. Mar. 30, 2022) (quoting *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014)).

As previously noted, Plaintiffs set forth five "Class Representatives Plaintiffs" (Shantell Allen's children – S.A., C.A.1, C.A.2, D.B.1, and D.B.2) and seek to assert negligence and NIED claims on behalf of two putative classes of individuals that had not reached the age of maturity prior to the filing of this lawsuit. [DE 30, ¶¶ 97–102.] Initially, Plaintiffs seek to proceed on negligence and NIED claims on behalf of a "Residents Class," consisting of any individuals born on or after December 20, 2002, who resided at West Calumet or enrolled and attended classes at Carrie Gosch. *Id.*, ¶ 99. They also seek to proceed on these claims on behalf of a "Bodily Injury Class," consisting of Residents Class members "who have been diagnosed by a medical professional with and/or treated by a medical professional for one or more of the diseases or conditions associated with exposure to lead, arsenic, or other toxic chemicals" set forth in paragraphs 89 to 93 of their complaint. *Id.*

As to numerosity of their proposed classes, Plaintiffs assert that there are around 346 households in West Calumet and annually 265 students that attended Carrie Gosch in a given school year. [DE 30, ¶ 103.] They claim numerous common issues of law and fact predominate over questions affecting only individual class members' claims, such as whether Defendants' facilities "caused the spread of hazardous and toxic materials

such as lead and arsenic," whether Defendants acted reasonably with respect to their operations, whether the alleged contaminants got into soil and groundwater of West Calumet and Lake County, Indiana, whether Defendants failed to warn Plaintiffs about the nature, extent, and scope of such contamination, and whether Plaintiffs have been exposed to hazardous substances and contamination and whether their exposure was greater than normal background levels of such chemicals. *Id.*, ¶ 104. Moreover, they claim the class is adequately represented by counsel in this case, which has experience handling similar matters; that the representative plaintiffs (the Allen family) are typical of the classes' claims; and that a class action is superior to other available methods of adjudicating the individual members' claims. *Id.*, ¶¶ 105–13.

Defendants tell me the class allegations are deficient for a number of reasons. At the outset, they note that mass tort cases typically fail to satisfy Rule 23's predominance requirement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997); *see In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1294-1304 (7th Cir. 1995). In that vein, they note that Plaintiffs claim exposure to a variety of "toxins," aside from lead. I can set this secondary argument aside because the negligence claims based on exposure to such toxins, aside from lead, will be dismissed, as previously discussed. Defendants further argue that there are numerous contributing factors that "caused" Plaintiffs' injuries, and Plaintiffs allege a "wide variety" of health conditions they have developed as a result of Defendants' contamination, reinforcing the conclusion that "each plaintiff's individual

exposure and injury will predominate" over issues common to the class. [*See* DE 39 at 7–8.]

Plaintiffs note that there is no categorical prohibition on pursuing mass tort claims through a class action. *Amchem*, 521 at 624–25 ("Even mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement."). *Accord Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006) ("This court has likewise approved mass tort or mass accident class actions when the district court was able to rely on a manageable trial plan—including bifurcation and/or subclasses—proposed by counsel."). It is not at all unusual for a court to take up the propriety of certifying a putative mass tort action following discovery, when it can be more clearly determined whether a class may be certified "with respect to particular issues," such as liability or damages. *See* Fed. R.. Civ. P. 24(c)(4). Indeed, that's the approach taken in a factually analogous (and equally distressing) lead exposure case involving the contamination of water in Flint Michigan. *See, e.g.*, *In re Flint Water Cases*, 558 F. Supp. 3d 459, 489 (E.D. Mich. 2021).

While Defendants press reasonable arguments for not certifying Plaintiffs' putative classes, these arguments are largely conclusory at this early stage. They are better taken with the benefit of discovery on the representative plaintiffs' claims prior to class certification. Plaintiffs' putative class claims "address each of the elements of Rule 23, relate to the subject matter of the litigation, and are not redundant, immaterial, or impertinent," and thus survive an attack on the pleadings. *See, e.g.*, *Rosales v. FitFlop*

24

*USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012) (collecting cases) (quoting *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 407 (C.D. Cal. 2005)).

With that said, Plaintiffs' proposed class definitions are inartfully pled. The complaint asserts claims on behalf of *both* a "Resident Class" and a "Bodily Injury Class." But simply residing at West Calumet or attending Carrie Gosch does not form a basis for a negligence or NIED claim against Defendants. The way I see it, the proposed Resident Class is simply a component of Plaintiffs' definition of the proposed Bodily Injury Class. Plaintiffs could have incorporated the language in the Resident Class definition into the Bodily Injury Class, rather than incorporating the Resident Class definition by reference. That would have been a more straightforward approach. And it seems to be what they intended, since all of their proposed class representatives allege "individual personal injur[ies]," supporting their negligence and NIED claims. [DE 30 at 5–8.] To be perfectly clear, I have no intention of certifying a class consisting of minors who merely attended West Calumet or attended Carrie Gosch. I thus construe the complaint to assert negligence and NIED claims not for two separate classes of residents, on one hand, and residents with present physical injuries, on the other, but rather a single class of individuals born on or after December 20, 2022, who formerly resided at West Calumet or attended Carrie Gosch, and who have been diagnosed with and/or treated for one of the conditions set forth in paragraphs 89 through 93 of the amended complaint. *See id.*, ¶¶ 99.

In short, I agree with Plaintiffs that, in this case, "class suitability issues are best resolved during a motion for class certification," and thus decline to strike the class allegations from their amended complaint. *Rosales*, 882 F. Supp. 2d at 1179. However, I will construe their class allegations to assert claims on behalf of a single Bodily Injury Class, consisting of former residents of West Calumet or attendees of Carrie Gosch, as outlined above. Defendants are free to renew their arguments in opposition to a motion for class certification.

ACCORDINGLY:

The pending Motions to Dismiss [DE 31; DE 35] filed by DuPont and Hammond Lead are **GRANTED IN PART**, as follows:

To the extent Plaintiffs seek to assert ordinary negligence claims based on injuries linked to "other toxins" released on Defendants' adjacent properties, their allegations are impermissibly vague and undeveloped. Count I is therefore **DISMISSED WITH PREJUDICE** as to Plaintiffs' negligence claims based on injuries caused by contact with "other toxins," aside from lead contaminants. In all other respects, the Motions to Dismiss [DE 31; DE 35] are **DENIED**.

The pending Motions to Strike [DE 33; DE 38] filed by DuPont and Hammond Lead are **DENIED**.

**SO ORDERED** on October 20, 2023.

 /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT