UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| S.A. by next friend SHANTELL ALLEN, *er al*.<br><br>Plaintiffs,<br><br>v.<br><br>E. I. DU PONT DE NEMOURS AND COMPANY, *et al.*,<br><br>Defendants. | CAUSE NO. 2:22-cv-359 |

**OPINION AND ORDER**

This is a proposed class action consisting of minors who lived or attended school near facilities operated by Defendants who allegedly released lead into the environment, causing personal injury and mental anguish. Plaintiffs seek to certify two classes: a personal injury class and a medical monitoring class. In the alternative, they seek certification of an issues class limited to liability and causation questions common to the plaintiffs. [DE 140.] For the reasons stated below, the motion for class certification is granted as to the medical monitoring class and denied as to the personal injury class and alternative issues class.

**Background**

I have laid out the allegations and background in this case in my order on Defendants' motions to dismiss, so I will only include a brief synopsis of them here. [DE 60.] This is a class action brought by 11 minors. The Plaintiffs either lived at the West Calumet Housing Complex or attended school at the Carrie Gosch Elementary School,

both of which are near, or on, the former site of the U.S. Smelter and Lead Refinery in East Chicago ("the Site"). Evidently, someone thought it was a good idea to put a housing project on the site of a former lead refinery, because that is exactly what they did in the early 1970s when the West Calumet Housing Complex was constructed. The Carrie Gosch Elementary School was at a location near it. The Environmental Protection Agency later designated the Site as a Superfund Site.

In 2005, the EPA listed Du Pont, Hammond Lead, and Atlantic Richfield Company (and unidentified other parties) as being potentially responsible for the contamination at the Site. In 2009, the Site was placed on the National Priorities List and in 2014 the EPA filed suit against parties including Du Pont in connection with pollution at the Site. In 2016, the mayor of East Chicago publicly revealed that the EPA found high levels of lead and other contaminants in the soil in communities near the refinery. Plaintiffs alleged they were unaware of hazardous levels of lead in the area until they received notice of the EPA's testing results from the mayor. The West Calumet Housing Complex and the Carrie Gosch Elementary School were closed soon after. In 2018, the West Calumet Housing Complex was demolished. Testing in the surrounding communities has since confirmed elevated levels of lead in children, with the highest exposure concentrated in the West Calumet and Calumet neighborhoods. [DE 140-1, 10.]

Plaintiffs sued two sets of defendants: First is the claim against E.I. Du Pont De Nemours and Company and the Chemours Company. According to the Amended Complaint, from 1910 to 1949, DuPont operated a facility on the Site where it

manufactured lead arsenate, an insecticide. In 2015, DuPont transferred its interest in the property to Chemours. The second group of defendants is Hammond Lead Products, LLC, Halstab, LLC, and Halox, LLC. This group is alleged to have been producing lead substances at two facilities near the Site since 1930. In summary, Plaintiffs allege that both of these groups of companies used lead and other contaminants in manufacturing products in the area near the Site and were responsible for lead contamination that harmed the Plaintiffs. Plaintiffs allege that the exposure to lead and other contaminants due to these companies' operations caused them physical and emotional damages.

The operative complaint in this case is the Amended Complaint filed on December 20, 2022. [DE 30.] Plaintiffs have two claims: one for negligence and the other for negligent infliction of emotional distress. Defendants filed motions to dismiss, which I largely denied. [DE 60.] I say "largely denied" because I did narrow the negligence claims to injuries linked solely to lead contaminants. *Id.* at 26. Any references in the Amended Complaint to "other toxins" causing the harms to the Plaintiffs were deemed to be too vague and speculative to plausibly state a claim. *Id.* at 10-11. Discovery in the case is ongoing. [DE 179.]

**Legal Standard**

Rule 23(a) of the Federal Rules of Civil Procedure allows a suit by representative parties on behalf of a class if the plaintiffs establish four requirements: (1) numerosity, (2) common questions of law or fact, (3) typicality, and (4) adequate representation. Fed. R. Civ. P. 23(a). Plaintiffs must also establish that at least one prong of Rule 23(b) is met.

Additionally, the Seventh Circuit recognizes "an implicit requirement under Rule 23 that a class must be defined clearly and that membership be defined by objective criteria[.]" *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015).

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that the requirements of Rule 23 are met. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). If such evidence is absent, certification is improper. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A "district court has broad discretion to determine whether certification of a class is appropriate." *Retired Chicago Police Ass'n*, 7 F.3d 584 at 596. Class certification is a critical issue that can vastly change the complexion of a case. For this reason, the Seventh Circuit has suggested that courts use "caution in class certification generally." *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008).

For purposes of a motion to certify a class, I do not focus on whether plaintiffs will prevail on the merits and am instead focused on whether Rule 23(a) has been satisfied. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."); *Schleicher v. Wendt*, 618 F.3d 679, 687 (7th Cir. 2010) ("The chance, even the certainty, that a class will lose on the merits does not prevent its certification.").

## Discussion

Plaintiffs propose a personal injury class ("Proposed Personal Injury Class") and a medical monitoring class ("Proposed Medical Monitoring Class"), or, alternatively, an issues class limited to liability and causation questions common to the plaintiffs ("Proposed Issues Class"). [DE 140.] I will discuss each of these proposed classes in turn.

### I. The Proposed Personal Injury Class

Plaintiffs define the Proposed Personal Injury Class as follows:

> A class of individuals born on or after December 20, 2002, who formerly resided at the West Calumet Housing Complex or attended the Carrie Gosch Elementary School, and who have been diagnosed with and/or treated for one of the conditions set forth in paragraphs 89 through 93 of the amended complaint.

[DE 140; DE 140-1, 7.] Plaintiffs claim this class meets the requirements of Rule 23(b)(3), [DE 140,] because questions of law or fact predominate over any questions affecting individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the dispute. Regardless of whether the Proposed Personal Injury Class would satisfy the requirements of Rule 23(a), I cannot certify this class because it fails to meet the strictures of Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This is the "most adventuresome" of the Rule 23(b) categories and is "[f]ramed for situations in which class-action treatment is not as clearly called for[.]" *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615-16 (1997) (internal quotation marks omitted).

Rule 23(b)(3)'s predominance requirement "is far more demanding" than the commonality requirement under Rule 23(a)(2). *Id.* at 624. While Rule 23(a)(2) only requires the existence of a common question, Rule 23(b)(3) requires that common questions *predominate* over the individual ones. *Howard v. Cook County Sheriff's Office*, 989 F.3d 587, 607 (7th Cir. 2021).

This is a qualitative assessment, not a quantitative one. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). In other words, a district judge doesn't just count up the number of common issues, on the one hand, and individual issues on the other, and then go with the column that has the most. *Id.* Instead, the concept of predominance requires an inquiry as to whether the class method of disposing of cases is a more efficient way to resolve mass litigation. For example, in *Parko v. Shell Oil*, the Seventh Circuit found that the plaintiffs failed to show predominance where causation and damages appeared to differ between different class members. 739 F.3d at 1085-1086.

The issue of predominance, especially as it relates to damages and causation, is particularly problematic in the mass tort and personal injury context. *Amchem*, 517 U.S. at 625 ("[T]he text of the Rule does not categorically exclude mass tort cases from class certification… The Committee's warning, however, continues to call for caution when individual stakes are high and disparities among class members great."); *Modern Holdings, LLC v. Corning, Inc.*, 2018 WL 1546355, *14 (E.D. Ky. 2018) ("Since *Amchem Prods., Inc.*, many district courts have refused to certify classes for mass tort claims because of dispersed personal injury or property damage."); *In re MTBE Prods. Liability Litig.*, 209 F.R.D. 323, 349 (S.D.N.Y. 2002) (noting that "the majority of courts refuse to

certify mass tort actions brought pursuant to Rule 23(b)(3)."); *Johnson v. Ethicon*, 2005 WL 3968820 (W. Va. Cir. Ct. 2005) ("[C]lass certification of claims for personal injury is extremely rare…."); Newberg on Class Actions § 4:54 (6th ed.) (stating that the predominance requirement "precludes certification in most mass tort personal injury cases.").

In this case, the Proposed Personal Injury Class (and its proposed class representatives) claim to suffer from dozens of different conditions. [DE 140 (including in the class definition those who have been "diagnosed with and/or treated for one for the conditions set forth in paragraphs 89 through 93 of the amended complaint.")] These conditions run the gamut from "cardiac effects" such as myocarditis, "neurological effects" such as neuropathy, "neuropsychological effects" such as memory loss and seizures, "reproduction effects such as spontaneous abortion[s] and malformations," "developmental effects" such as lowered IQ and growth deficits, damaged vision including cataracts and optic nerve damage, asthma, and sleep problems. [DE 30, ¶¶ 13, 18-22, 89-93.]

The causation and damages inquiries will differ substantially depending on which of these various conditions any individual plaintiff is suffering from. Whether their lead exposure caused a plaintiff's memory loss, sleep problems, vision loss, myocarditis, or spontaneous abortion, etc.—and what the damages arising from those injuries will be—are all very different inquiries and quite particularized. This would result in a class that would "essentially necessitate mini-trials to adjudicate damages" and causation for each class member. *Ibe v. Jones*, 836 F.3d 516, 531 (5th Cir. 2016).

Plaintiffs argue that the issues that are common are so similar as to predominate over any differences Defendants point to. [DE 151, 2-3.] This argument is essentially an attempt to "flip the script" and focus on how strong the class members' similarities are, rather than rebutting that there are some differences. In particular, they cite *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012), which states that "Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." They then state that "Plaintiffs' claims arise from a single contamination source, a uniform toxin (lead), and a shared exposure pathway tied to a defined geographic area, all supported by objective biomarker evidence." [DE 151, 2.] But these assertions do not match up with the evidence presented in this case or, at times, even the amended complaint.

Unless one is willing to interpret it exceedingly charitably, there is not just "a single contamination source" in this case. Plaintiffs seem to be referring to the USS Lead Superfund Site here, but critically, Defendants *did not operate on the site*. Rather, each had properties either "abutting the Site" or were "south of the Site" that Plaintiffs allege "contributed to its contamination." [DE 30, ¶¶ 46-59.] Plaintiffs even state elsewhere in the class certification briefing that their exposure to lead came "from the same industrial *sources*." [DE 140-1, 15 (emphasis added).] In short, there are multiple, separate contamination sources that Plaintiffs allege contributed to polluting the area with lead and causing their exposure; not one.

Plaintiffs' statement that all of these claims for all of the potential class members have a "shared exposure pathway" is an over-generalization. There is not just one exposure pathway. Plaintiffs claim, and the evidence shows, that potential class members may have been exposed via air, dirt, and water. [*See, e.g.*, DE 30 at ¶¶ 54, 74, 104, 142.] Even the "objective biomarker evidence" is not necessarily uniform, as Plaintiffs say they will show exposure through "positive tests lead [*sic*] in their blood or bones." [DE 140-1, 4.] As Plaintiffs explain, these different tests (blood tests and bone tests) can have notably different meanings for a patient. [*Id.* at 11-12.] In sum, I am not convinced that the class similarities are so significant of an aspect as to outweigh my concerns regarding the differences.

Plaintiff also argues that individualized damages cannot defeat class certification. To support this, they once again cite *Messner*, which they quote in their reply brief as stating "'individualized damages calculations do not preclude class certification.' *Messner*, 669 F.3d at 815." [DE 151, 3.] Plaintiffs put the statement in quotation marks, and even provide a pincite, but that is not exactly what the opinion states. The actual quotation is: "It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner*, 669 F.3d at 815. Of course, standing alone, this is true: the fact that damages will differ between class members is inevitable and not a bar to class certification. But large, independent inquiries into damages are undoubtedly *one* factor in considering predominance, as the Seventh Circuit confirmed when it considered it in *Parko* two years later. *Parko*, 739 F.3d at 1085-1086.

Moreover, *Messner*, and many of the cases it is citing to, was an antitrust class action, where individual damages differ, but in a very distinct way from how they may differ in a personal injury class action such as this one. As *Messner* stated in the preceding sentence, "plaintiffs must show damages, but individual proof of this element of a claim under the Clayton Act is not an obstacle to a showing of predominance." *Messner*, 669 F.3d at 815. While *Messner's* general statement is true, it is important to note that the "individualize questions regarding damages" can be particularly stark in personal injury / mass tort actions like this one, where the damages can differ far more and for more individualized reasons, including pain and suffering, than they may in an issue such as antitrust, as described above. *See also* Newberg on Class Actions § 4:62 (6th ed.) (collecting cases).

As alluded to above, proof of individualized damages is not the only concern for allowing this case to proceed as a class action on the Proposed Personal Injury Class. Proof of causation is an even bigger problem. The actual underlying conditions the Plaintiffs have developed and whether lead exposure caused that particular condition will also be a significant and varied inquiry in this case. In a toxic tort case, such as this one, causation is almost always a critical question upon which the case rises or falls. Under Indiana law a plaintiff has to prove both general causation (that a substance *can* cause a specific injury) and specific causation (that the exposure *in fact* caused the injury). *7-Eleven, Inc. v. Bowens*, 857 N.E.2d 382, 389 (Ind. Ct. App. 2006). This necessarily will involve the use of expert witnesses who will often use a differential diagnosis to "rule in" the offending toxin and "rule out" alternative causes. *C.W. ex rel. Wood v.*

*Textron, Inc.*, 807 F.3d 827, 831 (7th Cir. 2015); *Myers v. Illinois Central*, 629 F.3d 639 (7th Cir. 2010); *Cripe v. Henkel Corp.*, 318 F.R.D. 356 (N.D. Ind. 2017). By its very nature, this is an individualized determination, ill-suited for class treatment in this case. *Epperson v. Intern. Paper Co.*, 2024 WL 3746390, at *6 (W.D. La. Aug. 9, 2024) ("[C]ourts have repeatedly held that claims for personal and emotional injuries arising from exposure to toxic chemicals are inappropriate for class treatment because individualized factual issues concerning specific causation and damages predominate over any common issues.") (citation omitted)

In sum, "[q]uestions of individual damage calculations" as well as substantial questions regarding the underlying conditions and whether the lead exposure caused them, "will inevitably overwhelm questions common to the class." *Behrend*, 569 U.S. at 34. Because questions common to the class do not predominate over questions affecting individual class members—indeed, quite to the contrary—this case is ill-suited for class treatment for Plaintiffs who have suffered personal injury. For this reason, I am compelled to deny class certification of the Proposed Personal Injury Class.

## II. The Proposed Medical Monitoring Class

Plaintiffs define the Proposed Medical Monitoring Class as:

> Individuals who were born on or after December 20, 2002, who formerly resided at the West Calumet Housing Complex or attended the Carrie Gosch Elementary School and have tested positive for lead exposure, but have not yet been diagnosed with a disease or condition associated with such exposure.

[DE 140; DE 140-1, 7.] As a preliminary matter, I find that this class is sufficiently well defined. Generally, a class definition "need[s] to identify a particular group,

harmed during a particular time frame, in a particular location, in a particular way." *Mullins*, 795 F.3d at 660. The definition for the Proposed Medical Monitoring Class does this. It identifies a specific group, who lived at a particular location or attended a particular school during a specific period of time (2002 until, inherently, 2016 when they began closing the West Calumet Housing Complex and Carrie Gosch) and were harmed in a particular way.

**A. Rule 23(a) Requirements**

**Numerosity**

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). When the class is large, numbers alone may be dispositive of numerosity. *Riordan v. Smith Barrney*, 113 F.R.D. 60, 63 (N.D. Ill. 1986). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). Plaintiffs need to provide evidence showing "more than speculation" about how many people may be in the class, but Plaintiffs are not required "to identify the exact number of class members at this certification stage." *Anderson v. Weinert Enterps., Inc.*, 986 F.3d 773, 778 (7th Cir. 2021).

Plaintiffs argue that "there were more than a thousand residents, including 670 children, living at the West Calumet Housing Complex." [DE 140-1, 10.] Thus, they claim that both the Proposed Injury Class (which I have rejected under Rule 23(b) as described above) and the Proposed Monitoring Class "consist of potentially hundreds of class members." *Id.* Additionally, they point to a 2018 ATSDR Health Consultation

Report, that shows that 897 children out of 5,587 in the East Chicago area were found with elevated blood lead levels "with the highest exposure concentrated in the West Calumet and Calumet neighborhoods." *Id.*

During class certification, courts rely on reasonable estimates of class size based on the evidence and commonsense assumptions to determine, generally, if a class is so numerous as to make joinder impracticable. *Ocampo v. GC Servs. Ltd. P'ship*, 2018 WL 6198464, at *4-5 (N.D. Ill. Nov. 28, 2018) (due to the large number of letters sent during the relevant time period, "common sense would dictate" that "at least hundreds" met the class requirements). The evidence shows that hundreds of minors lived in the West Calumet Housing Complex (with additional children attending Carrie Gosch), and that minors in that area were more likely to suffer elevated lead levels.

For the Proposed Medical Monitoring Class, Defendants admit that it "might have approximately 100 class members" but still argues that the medical monitoring does not satisfy Rule 23(a)(1) because Plaintiffs have not shown joinder is impracticable. [DE 145, 17.] I disagree. Plaintiffs have presented evidence to support that there are many individuals that could fall into this class, so many that joinder would be difficult.

Additionally, a good number of the class members would likely be geographically disparate. The West Calumet Housing Complex and Carrie Gosch were closed, and those families had to move residences and/or schools. Additionally, as the proposed plaintiffs were minors at the time of the exposure, many have since grown up and moved away from the area completely. Take the 11 current plaintiffs across the proposed classes. As Plaintiffs explain, one is on active duty in Okinawa, Japan, five

live in Las Vegas, two live in Chicago, one lives in Nashville, and two live in Indianapolis. [DE 151, 7.] When determining whether joinder is impracticable, how geographically condensed or dispersed the plaintiffs are matters. *Anderson v. Weinert Enterprises, Inc.*, 986 F.3d 773, 777 (7th Cir. 2021). In this case, the fact that there is good reason to believe that the class plaintiffs are located across the country offers further support for finding Rule 23(a)(1) satisfied.

**<u>Commonality</u>**

For a class to be certified, "questions of law or fact" must exist common to the class. Fed. R. Civ. P. 23(a)(2). Despite the use of the plural "questions" in the rule, only one common question is necessary to satisfy Rule 23(a)'s commonality requirement. *See Dukes*, 564 U.S. at 350 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do.") (internal quotation marks omitted)); *Walker v. Bankers Life & Cas. Co.*, 2007 WL 2903180, *4 (N.D. Ill. Oct. 1, 2007) ("Not all factual or legal questions raised in a lawsuit need be common so long as a single issue is common to all class members." (internal quotation marks omitted)).

However, not just any common question will do. "Superficial common questions —like whether each class member shares a characteristic or 'suffered a violation of the same provision of law'—are not enough." *Van v. Ford Motor Co.*, 332 F.R.D. 249 (N.D. Ill. 2019) (quoting *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012)). Commonality instead requires a common issue capable of class-wide resolution "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. In essence,

commonality is about more than having salient common questions; it's about the ability to dispose of those questions with common answers. *Id.* at 350.

Plaintiffs claim that there are plenty of common questions for the Proposed Medical Monitoring Class, including "whether Defendants released toxic substances as part of their industrial operations, whether the substances contaminated the soil and air in the relevant area, whether defendants failed to warn residents or remediate the site, and whether the conduct caused Plaintiffs' lead exposure." [DE 140-1, 11.] Defendants respond that some of these questions do not have common answers and that others are merely superficial questions not central to the disposition of a claim.

This may be true for some of the common questions; however, Plaintiffs only need one to satisfy the requirements of Rule 23(a)(2). *Dukes*, 564 U.S. at 350. Plaintiffs have at least presented one common question, with some evidence that is salient and could be resolved class-wide for the Proposed Medical Monitoring Class: whether Defendant's conduct led to the Plaintiff's exposure to lead. While exposure alone is not sufficient for any claim, it is a question that is central to the validity of the claims. In other words, if Defendants did not cause the class members' lead exposure, there can be no claim.

Defendants point out that there are various potential sources of lead and that there are varying levels of lead in the geographic region. [DE 146, 17.] Indeed, this is a variation, but it is not one that defeats commonality. *Leib v. Rex Energy Operating Corp.*, 2008 WL 5377792, at *6 (S.D. Ill. Dec. 19, 2008) ("Some factual variation in the details of individual claims does not defeat a finding of commonality."); *Colo. Cross Disability Coal.*

*v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014) (finding that commonality "do[es] not require that every member of the class share a fact situation *identical* to that of the named plaintiff."). Defendants' argument here would make the commonality requirement more akin to the predominance requirement of Rule 23(b)(3), which is not something the Proposed Medical Monitoring Class needs to satisfy. *Amchem*, 517 U.S. at 624 (holding that the predominance requirement is "far more demanding" than the commonality requirement). The fact that there could be alternative explanations for some potential class members or that the levels of lead differed to some degree between different properties is not enough to defeat commonality.

Additionally, the fact that there may be some other ways class members may differ is not a reason to find the Proposed Medical Monitoring Class not to have satisfied Rule 23(a)(2). *Sherman v. Trinity Teens Solutions, Inc.*, 84 F.4th 1182, 1193 (10th Cir. 2023) (finding that a district court "misapplied Rule 23(a)'s commonality inquiry by scrutinizing the proposed class for noncommon issues, rather than common ones."). In sum, I find that the Proposed Medical Monitoring Class meets the commonality requirement.

**<u>Typicality</u>**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Claims of class representatives and class members are typical if they arise from the same practice or course of conduct and are based on the same legal theory. *McFields v. Dart*, 982 F.3d 511, 517 (7th Cir. 2020). "Typical does not mean identical, and the typicality requirement is

liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996). Typicality is meant to ensure that the claims of the class representatives have the "same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n*, 7 F.3d at 596 (citation and internal quotation marks omitted).

Most of the briefing on this issue related to the Proposed Personal Injury Class, which I have already determined will not be certified under Rule 23(b). For the Medical Monitoring Class, Plaintiffs argue that the proposed class representatives and the proposed class members were exposed to the same toxin, in the same area, have the same claims, and are seeking the same relief. Defendants take a narrower view, arguing that the Plaintiffs and the proposed class members lived at different properties within the area and others only attended Carrie Gosch Elementary. Defendants also argue that the proposed class members would vary in age from being children up to teenagers at the time, would have spent varying amounts of time in the contaminated area, and may have been exposed to lead through different pathways from different facilities or other sources. [DE 146, 19-20.] Defendants argue that, because of these variations, there is no singular causation theory that applies equally to each potential class member, and no singular set of operative facts that even *could* be typical of the class. *Id.*

Defendants' view of typicality is too narrow. *See Gaspar*, 167 F.R.D. at 57 ("Typical does not mean identical, and the typicality requirement is liberally construed."). The class representatives share essential characteristics that are typical of members of the class, as they were in the same area, were exposed to the same toxin,

and have the same claims with the same requested relief.[1] The class representatives and the Proposed Medical Monitoring Class's claims also arise from the same practices or course of conduct by Defendants in the area.

Defendants cite to *In re MTBE*, which found that, while the typicality requirement is "not demanding," it was not met in that case because "the contamination of each named plaintiff's well comes about through a factually unique set of circumstances." 209 F.R.D. at 337. But in *In re MTBE*, the differences in the courses of conduct leading to the plaintiff's separate injuries were stark. *Id.* at 337 ("Yet, the contamination of each named plaintiff's well comes about through a factually unique set of circumstances[.]") Some were caused by "a leaking UST," others were caused by a "burst pipeline," etc. *Id.* In this case, while there may be differences in the exposure pathways by which the plaintiffs were exposed (air, water, dirt), the underlying course of conduct (manufacturing operations in the area leading to lead pollution) resulting in injury is the same in a way it was not in *In re MTBE*. If the typicality requirement were interpreted as Defendants propose, formulating a class at all would be nearly impossible regardless of which Rule 23(b) prong a class was attempting to pursue.

---

[1] While evidence must be provided at the class certification stage, Rule 23(a)(3) "primarily directs the district court to focus on whether the named representatives' *claims* have the same essential characteristics as the claims of the class at large." *McFields v. Dart*, 982 F.3d at 518 (quoting *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (emphasis added). Indeed, Rule 23(a)(3) specifically states that it requires that the "the *claims* or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

**Adequacy of Representation**

The adequate representation inquiry consists of two parts: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Defendants do not challenge the adequacy of Plaintiffs' counsel. For the Proposed Medical Monitoring Class, Defendants argue that there is a conflict between the proposed class representatives and class members because the class representatives alleged they have present physical injuries and thus cannot serve as class representatives for a class only alleging confirmed exposure necessitating medical monitoring. [DE 146, 21-22.]

At the class certification stage, I go beyond the pleadings and consider the evidence presented. In their class certification briefing, Plaintiffs argue, with supporting evidence, that each class representative for the Proposed Medical Monitoring Class does not have a condition arising from their lead exposure yet, but has tested positive for elevated lead in their bones. [DE 140-1, 14; DE 141-3.] This lines up well with the Proposed Medical Monitoring Class's asserted injury.

Ironically, Defendants cite *Amchem* here, which recognized a conflict between "the currently injured and exposure-only categories" of plaintiffs and class members in a single class. 521 U.S. at 625. But that is the issue precisely being avoided here by the plaintiff moving to certify separate personal injury and medical monitoring classes. As an aside, I also note that the "exposure only" language from *Amchem* does not necessarily map well onto the Proposed Medical Monitoring Class. The Proposed

Medical Monitoring Class includes members that have *tested positive* for elevated lead in their systems, not those that merely claim they were exposed to it.

Defendants also attempt to create a catch-22 for plaintiffs here. They argue that, if the class representatives are aligned with the Proposed Medical Monitoring Class, then they do not have a claim under Indiana law, and if they have "present physical injuries," then they are not adequate class representatives because they are not aligned with the class. For the reasons stated above, I find that the class representatives are adequately aligned. As for the former part of this catch-22, I will not engage with it at this stage of the case on this motion.

It is important to note that at the class certification stage of litigation, I am focused—not on the merits of the case—but on whether Rule 23 has been satisfied. *Eisen*, 417 U.S. at 178 ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."); *Schleicher*, 618 F.3d at 687 ("The chance, even the certainty, that a class will lose on the merits does not prevent its certification."). Whether the Proposed Medical Monitoring Class's asserted injury is a cognizable legal injury and other merits-related issues is best left for summary judgment (or trial), when discovery is concluded, the evidence is all presented, and those issues are fully briefed.

**B. Rule 23(b)(2) Requirement**

Plaintiffs claim the Proposed Medical Monitoring Class meets the requirements of Rule 23(b)(2). "Colloquially, 23(b)(2) is the appropriate rule to enlist when the

plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 441 (7th Cir. 2015). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 350 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 132 (2009)).

Rule 23(b)(2) does not require predominance or superiority, but by "virtue of its requirement that the plaintiffs seek to redress a common injury" courts have generally found that it "operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members." *Lemon v. Intern. Union of Operation Engineers, Local No. 139 AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000). At the class certification stage, if plaintiffs provide an explanation by which a district judge can conceive of a proper class-wide injunction, it is sufficiently cohesive. *DG Ex rel. Stricklin v. Devaugn*, 594 F.3d 1188, 1200 (10th Cir. 2010).

In this case, the Proposed Medical Monitoring Class is asking that Defendants be required to "assist in monitoring them for conditions that may result from lead exposure." [DE 140-1, 2.] Plaintiffs have provided a general six-part plan for what this injunctive relief would look like, which includes "baseline neurocognitive, cardiovascular, and renal assessments" as well as "periodic biomonitoring and

diagnostic testing (e.g., blood lead testing, bone lead measurement via XRF, neurodevelopmental evaluations)[.]" *Id.* at 24. Defendants argue that this is not cohesive. In essence, they argue that the plan lacks the details necessary to be cohesive, will inevitably become individualized as class members may require or want different types of tests or different physicians, and that Plaintiffs lack sufficient evidence supporting that this relief is necessary for all plaintiffs.

In support, Defendants cite a number of cases. First up is *Leib v. Rex Energy Corp.* where a district judge found that determining a cohesive medical monitoring scheme would be too complex. This was because the plaintiffs were seeking to represent a class comprising of "all persons and non-governmental entities that own property or reside on property located in the towns of Bridgeport, Illinois and Petrolia, Illinois" who were near potential hydrogen sulfide contamination coming from over 100 nearby oil wells and were claiming both property damage and the need for medical monitoring relief. *Leib*, 2008 WL 5377792 at 1, 13. The class being considered in *Leib* was *far* more sweeping than the Proposed Medical Monitoring Class here. The Proposed Medical Monitoring Class is more cohesive geographically, is more cohesive in terms of age, claims exposure from fewer separate sources and only would contain people who can show elevated lead levels. Moreover, Plaintiffs in *Leib* were proposing *one* class including people with property damages and those with medical monitoring claims. *Id.* In this case, Plaintiffs have alleged a need for medical monitoring which simplifies the class further.

What's more, *Leib* found that the class was improper under Rule 23(b)(3), but then appears to mistakenly conflate the requirements of (b)(3) on the one hand, and (b)(2) on the other:

> Although Rule 23(b)(2) does not *expressly* contain a predominance and superiority requirement… certification under Rule 23(b)(2) does not relieve a court of its obligation to determine whether the existence of individual issues precludes certification… *For the same reasons* the Court found the medical monitoring claim was not appropriate for class treatment under Rule 23(b)(3), it also finds that claim is unmanageable under Rule 23(b)(2).

*Id.* at *15 (internal citations and quotation marks omitted) (emphasis added). As noted above, predominance is a specific requirement for a class seeking to proceed under the "most adventuresome" prong of Rule 23(b). *Amchem*, 521 U.S. at 614. It has more demanding requirements because it exists to catch those odd situations "in which 'class-action treatment is not as clearly called for' as it is in Rule 23(b)(1) and (b)(2) situations" but may "'nevertheless be convenient and desirable.'" *Id.* at 615 (quoting Adv. Comm. Notes, 28 U.S.C.App., p. 697). Since *Leib* was decided, the Supreme Court made it abundantly clear in *Dukes* that predominance is not required for a Rule 23(b)(2) class. The Supreme Court stated that "[w]hen a class seeks an indivisible injunction benefiting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute." *Dukes*, 564 U.S. at 362-63. In short, *Leib* is no longer persuasive on this point.

Defendants also cite to *In re Valsartan*, which actually certified a medical monitoring class. 2023 WL 1818922, at *32-33 (D.N.J. Feb. 8, 2023). Plaintiffs in that case

only provided a "bare bones account" of what their proposed injunctive relief would be, essentially only stating they wanted a court-supervised program. *Id.* at *33. Defendants point out that the judge only certified the class because one of plaintiffs' experts happened to discuss in his report "certain medical tests" that "presumably make up plaintiffs' medical monitoring program." *Id.* The judge in *In re Valsartan* found that it was "just enough to show that the class is cohesive[.]" *Id.*

Defendants argue that Plaintiffs provided even less than the plaintiffs did in *In re Valsartan*, but I disagree. Unlike in *In re Valsartan*, Plaintiffs here have at least provided the foundational elements of a plan in their six-point list. Further, while expert discovery is ongoing, Plaintiffs also provided a list of potential tests to use during parts of the requested medical monitoring and, seemingly unlike the plaintiffs in *In re Valsartran*, they stated specifically that they were proposing those tests as part of the proposed injunctive relief and have provided some evidence that these proposed tests are effective for identifying the presence of lead. [DE 140-1, 24-25.] So, this is an even better case for certifying a medical monitoring class than *In re Valsartran* was.

The overarching problem with Defendants' arguments here is that they frame cohesiveness as a higher standard than it is. Defendants present legitimate questions as to how the injunctive relief would be carried out in this case, but Plaintiffs need not have all of those answers now for a class to be certified under Rule 23(b)(2). Rule 23(b)(2) demands "at the class certification stage plaintiffs describe in reasonably particular detail the injunctive relief they seek such that the district court can at least conceive of an injunction that would satisfy [Rule 65(d)'s] requirements,' as well as the

requirements of Rule 23(b)(2)." *DG Ex rel. Stricklin v. Devaugn*, 594 F.3d 1188, 1200 (10th Cir. 2010). On the briefing and the evidence, I can conceive of proper injunctive relief here that could be hammered out if, or when, the case develops more. Thus, I find the Proposed Medical Monitoring Class satisfies the requirements of Rule 23(b)(2).

Having found that the Proposed Medical Monitoring Class is well-defined and satisfies the requirements of Rule 23(a) and Rule 23(b), it will therefore be certified.

## III. The Alternative Issues Class

As an alternative to the previous two proposed classes, Plaintiffs seek certification of an issues class including all plaintiffs limited to liability and causation issues common to all plaintiffs. Plaintiffs define the Proposed Issues Class as:

> All individuals born on or after December 20, 2002, who, between 2002 and 2016, resided at the West Calumet Housing Complex, or who attended Carrie Gosch Elementary School, for resolution of the following common issues: (1) whether Defendants owed a duty of care; (2) whether Defendants breached that duty; (3) whether exposure to lead at the levels documented is capable of causing the injuries alleged; (4) whether Defendants knew or should have known of the contamination and failed to warn; and (5) whether the alleged exposures satisfy Indiana's modified impact rule for negligence and NIED claims.

[DE 140-1, 27.]

Rule 23(c)(4) provides that "an action may be brought or maintained as a class action with respect to particular issues" when such certification will materially advance the litigation. "A district court has the discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone where damages or causation may require individualized assessments." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010).

Plaintiffs' proposed this alternative class for consideration "in the event that these two [the Proposed Personal Injury Class and the Proposed Medical Monitoring Class] are not certified[.]" [DE 140-1, 26.] It is unclear if Plaintiffs would still want the alternative class for all plaintiffs in the event that *one* of their proposed classes is satisfied and the other is not, but regardless, I find that the Proposed Issues Class is not certifiable.

As I stated in my opinion on the motions to dismiss, "I have no intention of certifying a class consisting of minors who merely [resided in the] West Calumet [Housing Complex] or attended Carrie Gosch." [DE 60, 25.] That is, however, exactly what the Proposed Issues Class is: "All individuals born on or after December 20, 2002, who, between 2002 and 2016, resided at the West Calumet Housing Complex, or who attended Carrie Gosch Elementary School[.]" [DE 140-1, 27.]

Despite the uphill battle Plaintiffs should have expected for this argument, they barely even attempted to argue why this class is proper in the few pages of briefing they dedicate to it. Plaintiffs argue that this class, "for the reasons described above in Section […], meets the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a)." *Id.* (brackets as they appear in original). It is unclear what section Plaintiffs meant to refer to in these brackets that they neglected to fill in, but no prior section for a different class would have worked for the Proposed Issues Class anyway, because it is substantially broader than both the Proposed Medical Monitoring Class and the Proposed Personal Injury Class.

A "Rule 23(c)(4) issues class must still meet the requirements of Rule 23(a) and (b) (except for the predominance requirement of Rule 23(b)(3))." *Tasion Coms., Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 63 (N.D. Ca. 2015). This sweeping proposed class would face significant, unique hurdles for showing commonality, typicality, and adequacy, especially for the third item in the definition. [DE 140-1, 27 ("(3) whether exposure to lead at the levels documented is capable of causing the injuries alleged[.]")]. Plaintiffs have not met their burden of showing how a proposed class of this breadth meets the necessary requirements and thus cannot be certified.

**Conclusion**

For these reasons, Plaintiffs' motion for class certification [DE 140] is granted in part and denied in part. It is **GRANTED** as to the Proposed Medical Monitoring Class and **DENIED** as to both the Proposed Personal Injury Class and the Proposed Issues Class.

**SO ORDERED**.

ENTERED: September 28, 2026.

/s/Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT